IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSE JOSE TORRES, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-2323 |
| | § | |
| CITY OF HOUSTON and | § | |
| LAUREN BARD, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion for Summary Judgment [Doc. # 23] filed by Defendant Lauren Bard, to which Plaintiff Jose Jose Torres filed a Response [Doc. # 27], and Bard filed a Reply [Doc. # 28].  Also pending is the Motion to Dismiss [Doc. # 24] filed by Defendant City of Houston (the "City"), to which Plaintiff filed a Response [Doc. # 26], and the City filed a Reply [Doc. # 29].  Having reviewed the full record and applicable legal authorities, the Court **grants** both Motions and **dismisses this case with prejudice**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that in July 2010, a 14-year old girl reported to police that she was awakened to find a man standing over her.  The girl reported that the man had a knife and a screwdriver, with which he threatened her, and that he sexually assaulted

her.  Plaintiff alleges that the girl told the police officer who responded to the family's 911 call that she could not identify the attacker because it "was too dark."

Plaintiff alleges that the case was assigned to Houston Police Department ("HPD") Officer "N.R. Barnes" with the juvenile sex unit.  *See* Second Amended Complaint [Doc. # 19], ¶ 12.  Plaintiff alleges that, a few days later, the girl reported to Officer Barnes that she believed the attacker was "the cable guy."  Before the attack, Plaintiff had visited the girl's home soliciting cable business.  Plaintiff admitted to Officer Barnes that he had visited the girl's home, but disputed that he had been inside the house.

Plaintiff was arrested in February 2011.  The probable cause affidavit was based on the statements given by the victim and her mother, including the statement that Plaintiff had been inside the house prior to the attack.

The case was assigned for prosecution to Assistant District Attorney ("ADA") Lauren Bard, who presented the case to a grand jury and obtained an indictment against Plaintiff.  Plaintiff alleges that his criminal defense attorney and an investigator were interviewing the victim's mother and step father when ADA Bard telephoned the mother and told her not to talk to the attorney and the investigator

because "they are on the other side."  *See* Affidavit of Nick Ramirez, Exh. to Response to Bard's Motion for Summary Judgment.[1]

The victim's mother later recanted her statement that Plaintiff had been inside the house, and a new ADA was assigned to the case.  The new ADA sought and obtained the dismissal of all charges against Plaintiff.

Plaintiff filed this lawsuit against Defendants City of Houston and ADA Bard, alleging federal claims under 42 U.S.C. § 1983 and § 1985, and asserting a variety of state law causes of action including "false imprisonment and official oppression," assault, intentional infliction of emotional distress, malicious prosecution, and defamation.  Defendants Bard and the City each filed a Motion to Dismiss.  By Memorandum and Order [Doc. # 12] entered December 14, 2012, the Court granted both motions, but allowed Plaintiff an opportunity to attempt to assert a § 1983 claim against the City based on an official policy, and/or to assert a § 1983 claim against the HPD officer in her individual capacity.  *See* Memorandum and Order, p. 10.  The Court cautioned Plaintiff that the Amended Complaint must assert only a claim under

---

[1]    It appears from Ramirez's Affidavit that he told the victim's mother and step-father only that he "was doing a follow-up as to what happened."  *See* Ramirez Aff., unnumbered page 2.  There is nothing to indicate that Ramirez advised the victim's mother that he represented the criminal defendant accused of assaulting her daughter, or otherwise made clear that he was there on behalf of the criminal defendant.  Later, when Bard telephoned and advised the mother that Ramirez was there on Torres's behalf, the mother stated that she did not want to talk to them and asked them to leave the house.  *See id.*, unnumbered page 3.

§ 1983 and must comply with the requirements of Rule 11 of the Federal Rules of Civil Procedure.  *See id.* at 12.  The Court did not grant leave for Plaintiff to name Bard as a defendant in the amended pleading.

On January 14, 2013, Plaintiff filed his First Amended Complaint [Doc. # 13]. Plaintiff again named Bard as a Defendant, and again asserted against the City the same § 1985 claim that was previously dismissed.  Plaintiff again named "N.R. Barn" in the "Defendants" section, but not in the caption, and again stated falsely that she had "made her appearance."  The same day, Plaintiff also filed a Motion for Leave to File Amended Petition [Doc. # 14] and a Motion to Vacate the Dismissal Order as to Bard [Doc. # 15].  At the pretrial conference on January 31, 2013, the Court denied the Motion for Leave to File Amended Petition because many of the claims proposed therein patently lacked merit, and ordered Plaintiff instead to file a Second Amended Complaint within the parameters discussed during the conference.  *See* Hearing Minutes and Order [Doc. # 18].  The Court granted the City's Motion to Strike the First Amended Complaint.  The Court denied Plaintiff's Motion to Vacate the Dismissal Order as to Bard, except to the extent that Plaintiff was granted leave to file **only** a defamation claim against Bard if he could satisfy the requirements of *Imbler v. Pachtman*, 424 U.S. 409 (1976).  *See id.*

On February 28, 2013, Plaintiff filed his Second Amended Complaint [Doc. # 19].  Thereafter, Bard filed her Motion for Summary Judgment, and the City filed its Motion to Dismiss.  After Plaintiff failed to respond to either motion, the Court issued an Order [Doc. # 25] directing Plaintiff to respond by May 7, 2013.  Plaintiff filed his responses by the extended deadline, and movants filed replies.  The pending motions are now ripe for decision.

## II.  CLAIMS AGAINST "N.R. BARN" OR "N.R. BARNES"

"N.R. Barnes" has never been named as a Defendant in the caption of any complaint filed by Plaintiff in this case.  In all three complaints, however, Plaintiff named "N.R. Barn," a Houston Police Officer, in the "Defendants" section.  In the "Facts" section of each Complaint, Plaintiff identified "N.R. Barnes" as the juvenile sex unit officer to whom the investigation of this case was assigned.  Neither "N.R. Barn" nor "N.R. Barnes" was named in any of the causes of action in any of the complaints.  The Court noted these problems with the Original Complaint when it issued its Memorandum and Order [Doc. # 12] on December 14, 2012, but allowed Plaintiff to attempt to assert a § 1983 claim against the correctly-named police officer in her individual capacity.  When Plaintiff filed his Second and Third Amended Complaints, however, he failed to address any of the problems identified by the Court in connection with "N.R. Barn."  Moreover, there is no evidence that Plaintiff has

served "N.R. Barn."  As a result, pursuant to Rule 4(m) of the Federal Rules of Civil

Procedure, any claims Plaintiff may purport to assert against HPD Officer "N.R.

Barn" or "N.R. Barnes" are **dismissed**.

## III.   MOTION FOR SUMMARY JUDGMENT BY LAUREN BARD

Plaintiff alleges in the Second Amended Petition that Bard made defamatory

statements to the media.[2]  Bard has moved for summary judgment, arguing that any

defamation claim based on the statement she made to the media is time-barred, and

that Plaintiff has failed to present evidence that she made any other statement to the

media.

### A.   Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary

judgment, after adequate time for discovery and upon motion, against a party who

fails to make a sufficient showing of the existence of an element essential to the

party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th

Cir. 1994) (*en banc*); *see also Baton Rouge Oil and Chem. Workers Union v.*

*ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment "should

---

[2]     Plaintiff in the Second Amended Complaint continues to assert claims that were
previously dismissed as within Bard's absolute prosecutorial immunity.  The only
claim Plaintiff was allowed to refile against Bard is a defamation claim.  All other
claims remain **dismissed**.

be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322-23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would

prove the necessary facts.  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence.  *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-413).  The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence.  *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413).  Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.  *See* FED. R. CIV. P. 56(c)(4); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).

## B.    <u>Statute of Limitations</u>

It is undisputed that Bard spoke with reporters in February 2011.[3]  The statute of limitations for a defamation claim is one year.  *See* TEX. CIV. PRAC. & REM. CODE § 16.002(a).  Plaintiff filed this lawsuit on August 6, 2012, well after the one-year statute of limitations expired as to the February 2011 statements.

---

[3]    The substance of Bard's statements in February 2011 is disputed.

In response to Bard's Motion for Summary Judgment based on the statute of limitations, Plaintiff argues that "the statute of limitations is a state matter" and that Texas law provides that:

> If a filed pleading relates to a cause of action . . . that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability of defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

*See* Response [Doc. # 27], pp. 5-6 (quoting TEX. CIV. PRAC. & REM. CODE § 16.068). The defamation claim in the Original Complaint in this case, however, was subject to a plea of limitation as to the statements in February 2011. As a result, § 16.068 does not affect whether the claim regarding the February 2011 statements is time-barred. Bard is entitled to summary judgment that Plaintiff's defamation claim based on her statements in February 2011 is time-barred.

## C.    Claims Based on Other Statements

In his defamation claim in the Second Amended Complaint, Plaintiff alleges that on August 5, 2011, an unidentified "spokesperson for the Harris County District Attorney's Office" released to the media an allegedly false and defamatory statement about Plaintiff. *See* Second Amended Complaint, p. 17.

Bard has presented sworn testimony that she is not the spokesperson who made any statement on August 5, 2011. *See* Bard Affidavit, Exh. C to Motion for Summary

Judgment, p. 2.  Indeed, Bard has stated under oath that she did not make any statements to the media after the indictment against Plaintiff was dismissed on August 3, 2011.  Plaintiff has presented no evidence to the contrary.  As a result, Plaintiff has failed to present evidence that raises a genuine issue of material fact that Bard made any statements other than the time-barred statement in February 2011.

Plaintiff argues in his Response that the Court cannot grant summary judgment because "Plaintiff states Defendant Bard said certain things and Defendant Bard states, 'no, I did not,'" creating "a fact question for a jury to decide."  *See* Response, p. 5.  Bard has presented sworn testimony that she did not make the challenged statements in August 2011, and Plaintiff has not presented evidence to the contrary. Plaintiff's unsupported ***allegation*** that Bard was the "unnamed spokesperson" in August 2011 does not raise a genuine issue of material fact.  *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008); *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings).

### D.   Other Arguments in Plaintiff's Response

In addition to the arguments discussed above, Plaintiff in his Response argues that the Code of Judicial Conduct prohibits judges from making public comments

about pending matters.  *See* Response, p. 6.  It is unclear to what this argument relates. There are no allegations that Bard is a judge, or that any judge made public comments regarding Plaintiff's case while it was pending.

Plaintiff argues also that the Court cannot grant summary judgment on Plaintiff's defamation claim because "there is the issue of injunctive relief pending." *See id.* at 7.  The requested injunctive relief relates to a City policy "which would not allow defense counsel to interview key witnesses."[4]  *See* Second Amended Complaint, p. 22.  Bard (in her individual capacity) is not a proper defendant for this claim for injunctive relief because there is no evidence that Bard, a Harris County prosecutor, individually or officially has any authority to change HPD written policies. Additionally, the Court did not grant leave for Plaintiff to assert a claim for injunctive relief against Bard and, as noted below, the claim for injunctive relief is being dismissed as against the City.

Bard is entitled to summary judgment on Plaintiff's defamation claim.

---

[4]    Plaintiff in his Response to Bard's Motion for Summary Judgment concedes that the policy, which relates only to HPD officers, actually allows the police officers to speak to defense counsel.  Plaintiff complains, however, that "upon reading it closely, it only allows speaking to the attorney's [*sic*] if the police officer wants to talk to them." *See* Response, p. 7.

## IV.   CITY'S MOTION TO DISMISS

### A.   Standard for Motion to Dismiss

Plaintiff asserts constitutional claims against the City of Houston pursuant to 42 U.S.C. § 1983.  Plaintiff, in the Second Amended Complaint, also asserts claims that were previously dismissed, such as a conspiracy claim, a § 1985 claim, and a § 1983 claim based on ratification.  The only claim against the City of Houston that Plaintiff was allowed to pursue in the Second Amended Complaint is a § 1983 claim based on an official policy, and all other claims remain **dismissed** for the reasons stated in the Court's December 14, 2012 Memorandum and Order.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted.  *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).  The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true.  *Harrington*, 563 F.3d at 147.  The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012).  When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they

plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679. Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

### B.     Requirements for § 1983 Claim Against Municipality

Under *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658 (1978), and its progeny, the fact that a plaintiff's constitutional rights may have been violated is not enough to impose liability on a municipality. Instead, to impose liability on a municipality under § 1983 for the misconduct of its employee, a plaintiff must show not only a constitutional violation, but also that an official policy promulgated by the municipality's official policymaker was the cause of the constitutional injury. *See James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009). Official policy can exist in the form of "written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.*

***Official Policy***.  –  Plaintiff in this case identified a policy adopted by the City of Houston based on a blogger's report of a memorandum from the HPD Chief's Command/Legal Services that precluded officers from having discussions with

criminal defense attorneys regarding a pending criminal case "without first obtaining express permission" from the prosecutor. *See* Exhibit C to First Amended Complaint. At the pretrial conference on January 31, 2013, Plaintiff's counsel represented to the Court that this policy was the only policy at issue. Additionally, Plaintiff's counsel stated that the policy, "if in fact I'm able to prove it, that's the only thing I can hang my hat on." *See* Transcript, Exh. A to City's Motion, p. 25.

The uncontroverted evidence in the record establishes that this policy, issued as HPD Circular No. 10-0701-138 on July 1, 2010, was no longer in effect at the time Plaintiff was arrested in February 2011. Indeed, on August 18, 2010, HPD Circular No. 10-0818-181 was issued to supersede the July 1, 2010 Circular, and to clarify that "permission from the prosecutor is NOT required before speaking to a criminal defense attorney about a pending case." *See* HPD Circular No. 10-0818-181, Exh. B to Motion to Dismiss (emphasis in original). Therefore, the policy on which Plaintiff now attempts to base his § 1983 claim is an official HPD policy that police officers may speak with defense counsel, but are not required to do so.

***Cause of Constitutional Injury***. – Plaintiff asserts a § 1983 claim based on alleged violations of his rights under the Fourth, Sixth, and Eighth Amendment.[5]

---

[5]    Plaintiff in the Second Amended Complaint asserts a § 1983 claim based on alleged violations of the Fourteenth Amendment, but in his Response he does not address the City's Motion to Dismiss this claim.

Plaintiff fails to explain how the policy of allowing, but not requiring, police officers to speak with defense counsel caused any of these alleged constitutional violations.

The Fourth Amendment claim appears to be that the City falsely accused Plaintiff of a crime that he did not commit and prepared a false affidavit to support the issuance of an arrest warrant.  Plaintiff mentions a search, but states that he allowed himself to be searched.  *See* Second Amended Complaint, ¶ 60.  Plaintiff complains that Bard and HPD Officer Barnes interfered with his attempts to interview the victim's mother, but alleges that the interference occurred *after* his arrest.  As a result, Plaintiff has not alleged factual support for the conclusory allegation that the policy regarding HPD officers' contact with defense counsel caused him to be falsely arrested.

Plaintiff asserts a § 1983 claim based on an alleged violation of his Sixth Amendment right to confront witnesses and to have effective assistance of counsel. The "right to confront witnesses" is a right to confront witnesses during trial.  *See California v. Green*, 399 U.S. 149, 157 (1970).  Plaintiff in his Response argues that defense counsel cannot "know which witnesses to use if he is not allowed to interview them."  *See* Response, p. 5.  Plaintiff does not explain, however, how an HPD policy allowing, but not requiring, police officers to talk with defense counsel precludes defense counsel from knowing which witnesses to use.   The identity of the

investigating officer, even if he declines to speak with defense counsel, is known. Indeed, it is undisputed that Plaintiff's criminal defense counsel in this case knew the identity of the HPD investigating officer.

Plaintiff's § 1983 claim based on an alleged violation of the Eighth Amendment involves the amount of bail imposed in Plaintiff's criminal case.  Plaintiff does not explain how an HPD policy regarding officers' communications with criminal defense counsel could conceivably cause a judge to impose bail that is excessive and violates the Eighth Amendment.  Instead, in response to the City's Motion to Dismiss this claim, Plaintiff argues that "had the police done their job properly, Plaintiff would not ever have been arrested."  *See* Response, p. 6.

Plaintiff has failed to allege factually that the HPD's identified official policy caused the alleged violations of his constitutional rights under the Fourth, Sixth, and Eighth Amendments.  The City is entitled to dismissal of Plaintiff's § 1983 claim.[6]

## VI.   REQUESTS FOR SANCTIONS

### A.   42 U.S.C. § 1988

Bard seeks to recover attorneys' fees pursuant to 42 U.S.C. § 1988.  Section 1988 allows the Court, *in its discretion*, to award attorneys' fees to the prevailing party in a § 1983 action.  *See Funeral Consumers Alliance, Inc. v. Serv. Corp., Int'l,*

---

[6]     Because Plaintiff has failed to state a claim for relief under § 1983 based on the identified HPD policy, he is not entitled to injunctive relief regarding the policy.

695 F.3d 330, 340 (5th Cir. 2012).  Plaintiff in his Response did not address Bard's request for fees pursuant to § 1988.  Nonetheless, the Court exercises its discretion in this case against awarding Bard her attorneys' fees.

Bard was represented by an Assistant District Attorney and, as a result, did not incur attorneys' fees in the traditional sense.  Moreover, as is explained below, the Court concludes that it is more appropriate in this case to require Plaintiff's counsel to obtain further education in the areas of federal civil rights law and federal civil procedure.

**B.   28 U.S.C. § 1927**

The City seeks to recover attorneys' fees pursuant to 28 U.S.C. § 1927, which allows the Court to impose sanctions against an attorney who unreasonably and vexatiously multiplies the proceedings in a case.  Specifically, § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  Sanctions pursuant to § 1927 "are not to be awarded lightly.  They require 'evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court.'"  *Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 479 (5th Cir. 2012) (quoting *Edwards v. Gen. Motors Corp.,* 153 F.3d 242, 246 (5th Cir. 1998)).

Plaintiff's response to the City's Motion for attorneys' fees pursuant to § 1927, in its entirety, is as follows:

> The terms used by the City are (1) bad faith, (2) improper notice, (3) reckless disregard to the duty owed to the court. Other terms include unreasonable and vexatious.

> One can only wonder as to how many of these terms could be applied, due to shoddy police work which is the product of the standing policy, if the end result would have been the incarceration of Plaintiff for something he did not even dream of doing.

> Perhaps he needs some help to get restarted in his life, after all, he did not have a record at all.

Response to Motion to Dismiss, p. 6.

The Court does not find that Plaintiff's counsel acted in bad faith or with an improper motive. Instead, as discussed below, the Court finds that Plaintiff's attorney has limited knowledge and experience in the areas of federal civil procedure and federal civil rights law. Consequently, the Court in the exercise of its discretion declines to impose the City's attorneys' fees on Plaintiff's counsel as a sanction pursuant to § 1927.

## C.   Court's Inherent Power

"Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). The Court's inherent powers are "governed not by rule or statute but by the

control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 630-631 (1962)); *see also Citizens Bank & Trust Co. v. Case*, 937 F.2d 1014, 1023 (5th Cir. 1991) (holding that Court's inherent power to sanction is based on the need to control court proceedings and to protect the exercise of judicial authority in connection with those proceedings).  "A primary aspect of [the Court's] discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44-45.

In this case, the Court finds that sanctions are appropriate because Plaintiff's attorney repeatedly and willfully failed to comply with Court orders.  The Court notes also that throughout this lawsuit, Plaintiff's counsel has displayed a serious lack of understanding of the fundamental aspects of federal civil rights law, federal civil procedure, and this Court's published procedures.  Plaintiff filed this lawsuit on August 6, 2012, but did not have summons issued until October 24, 2012, after the Court issued warnings pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. The Court dismissed Plaintiff's claims against Defendant Bard, the City of Houston, and "N.R. Barn."  *See* Memorandum and Order [Doc. # 12].  The Court permitted Plaintiff to file an Amended Complaint against the City of Houston asserting only a claim under § 1983 based on an official policy.  *See id.*, p. 10.  The Court also

permitted Plaintiff to file an Amended Complaint against the HPD officer individually, asserting only a claim under § 1983. *See id.* at 12.

On January 14, 2013, the deadline for the amended complaint, Plaintiff filed a First Amended Complaint [Doc. # 13] that again asserted the dismissed claims against Bard and the dismissed claims against the City that were not based on § 1983. Plaintiff continued to assert erroneously that Defendant "N.R. Barn . . has made her appearance." *See* First Amended Complaint, ¶ 6.

Plaintiff's counsel failed to appear for a conference on January 28, 2013, because he was having telephone issues.  At the rescheduled conference on January 31, 2013, the Court noted that Plaintiff's counsel's statements, though his secretary, indicated that counsel believed the Court preferred counsel to participate in conferences by telephone. *See* Hearing Transcript, Exh. A to City's Motion, p. 3.  The Court notified counsel that the opposite was true and that "it's made quite clear" in the Court's published procedures.  *See id.*

The Court then explained clearly to counsel the defects in the Original Complaint and in the First Amended Complaint, which the Court struck.  The Court noted that counsel stated in the Original and First Amended Complaints that "N.R. Barn" had made an appearance "which is not true and . . . there's been no service on her." *See id.* at 6.  The Court directed Plaintiff's counsel to file a Second Amended Complaint, and told counsel he was required to "buy this record" so that the Second

21

Amended Complaint could comply with the Court's instructions.  *See id.* at pp. 7-8.
The Court admonished Plaintiff's counsel that he "must comply with the requirements
. . ..  You must.  It is my final warning."  *See id.* at 10.

Counsel did not comply with the Court's order to buy the record,[7] and the
Second Amended Complaint failed to comply with the Court's instructions given
during the January 31 conference.  The Third Amended Complaint again stated falsely
that "Defendant N.R. Barn . . . has made her appearance."  *See* Third Amended
Complaint, ¶ 6.  Plaintiff included claims against Bard other than a defamation claim,
and included dismissed claims against the City other than the § 1983 claim.

At the January 31 conference, the Court directed Plaintiff to respond to
Defendant's dispositive motions by April 11, 2013.  *See* Trans., p. 23.  Plaintiff failed
to file a response to either Bard's Motion for Summary Judgment or the City's Motion
to Dismiss by the April 11 deadline.  In the interests of justice, however, the Court
allowed Plaintiff an additional amount of time in which to respond to the pending
motions.  *See* Order [Doc. # 25].

At the January 31 conference, the Court discussed with Plaintiff's counsel the
conflict that would arise should he become a witness in the case.  *See* Trans., pp. 21-
22.  Counsel assured the Court that any affidavits would be provided by his

---

[7]     Counsel purchased neither a copy of the transcript nor an audio recording of the
hearing.

investigator, and that he understood he could be required to have a separate attorney represent Plaintiff if he (Plaintiff's current attorney) became a witness. *See id.* at 22. In support of his Response to the City's Motion to Dismiss, however, Plaintiff's counsel submitted his own affidavit.   In the affidavit, counsel describes his conversations with the victim's father and the father's attorney. *See* Affidavit of Juan Angel Guerra, Exh. to Response [Doc. # 26].

The conduct of Plaintiff's counsel throughout this litigation has been unacceptable and sanctionable under the Court's inherent powers.   He failed repeatedly to comply with the Court's orders, and made false statements in pleadings. The Court believes, however, that counsel's misconduct was not based on malice but, instead, was the result of his lack of familiarity with federal civil procedure and with substantive federal civil rights law.  As a result, rather than impose monetary sanctions on Plaintiff's attorney, the Court requires counsel, as a remedial and prophylactic measure more than a sanction, to complete seven (7) hours of Continuing Legal Education ("CLE") in federal civil procedure and seven (7) hours of CLE in federal civil rights law. *See, e.g., Willhite v. Collins*, 459 F.3d 866, 870 (8th Cir. 2006) (suggesting CLE as an appropriate sanction); *In re Vialet*, 460 F. App'x 30, 32-33 (2d Cir. Feb. 7, 2012); *In re Hsu*, 451 F. App'x 37, 39 (2d Cir. Dec. 19, 2011) (citing *In re Zhang*, 376 F. App'x 104, 108-09 (2d Cir. May 10, 2010); *Edmonds v. Seavey*, 379 F. App'x 62, 65 (2d Cir. May 27, 2010); *In re Thomas*, 250 F.3d 744, 2001 WL

274750, *1 (5th Cir. Feb. 22, 2001); *Bullard v. Chrysler Corp.*, 925 F. Supp. 1180, 1191 (E.D. Tex. 1996).  These hours are in addition to the CLE required of all active attorneys, and may not be taken through on-line courses.  Plaintiff must present evidence by December 31, 2013, that he has complied with this requirement.  Failure to comply may result in the rescission of counsel's admission to practice in this district.

## V.    CONCLUSION AND ORDER

Based on the foregoing, Plaintiff's defamation claim against  Defendant Bard based on statements in February 2011 is time-barred, and Plaintiff has failed to present evidence that Bard made any other statements.

Plaintiff in his Second Amended Complaint has failed to allege a factual basis for his § 1983 claims against the City of Houston.  Accordingly, it is hereby

**ORDERED** that Defendant Lauren Bard's Motion for Summary Judgment [Doc. # 23] is **GRANTED** and the claims against her are **DISMISSED WITH PREJUDICE**.  It is further

**ORDERED** that Defendant City of Houston's Motion to Dismiss [Doc. # 24] is **GRANTED** and the claims against it are **DISMISSED WITH PREJUDICE**.  It is further

**ORDERED** that by **December 31, 2013**, Attorney Juan Angel Guerra shall present evidence that he has completed seven (7) hours of CLE in the area of federal

civil rights law, and seven (7) hours of CLE in the area of federal civil procedure. These CLE hours are in addition to the CLE required of all active attorneys, and may not be taken through on-line CLE courses.

The Court will issue a separate final judgment.

SIGNED at Houston, Texas, this **31st** day of **May, 2013**.

Nancy F. Atlas
United States District Judge